This case brings before the court for construction the last will of Margaret B. Chandler, late of Essex County. The will is divided into two parts, headed respectively:
"Section I. If both my husband, William H. Chandler, and my son, Desmond B. Chandler, survive me."
"Section II. In the event my husband, William H. Chandler, shall predecease me, and my son, Desmond B. Chandler, shall survive me."
Both the husband and the son did survive testatrix, the former by a year and a half; the son Desmond still lives. Desmond, as well as the guardian ad litem of Desmond's only child, William H. Chandler, II, contend that certain provisions found in section II are effective despite the fact that testatrix' husband did not predecease her.
It is apparent that testatrix intended most of the provisions of section I and section II to take effect respectively only in the contingency stated at the head of the one section or the other, for these provisions are either identical or else are incompatible. Let us make the comparison.
Section I begins with a legacy to the husband of "my personal jewelry and household effects," while section II instead gives to the son Desmond "all of my personal and household effects that he may care to receive, the remainder to be sold for the account of my estate; and I give and bequeath to my said son the sum of $2,000." Evidently these are alternative gifts, one to the husband should be survive, the other to the son, if the husband should not survive testatrix.
In each section is a bequest of the residuary estate to a trustee with directions to invest and to pay the income to the son.
Section I empowers the trustee in his discretion to make payments to the son out of corpus, up to $1,000 a year. Section *Page 337 
II contains a like power with a limit of $2,000 a year. Here again are alternates.
Each section contains a direction for the final disposition of the estate under certain contingencies which I will set forth fully below.
The foregoing comprises the substance of all of section I but not all of section II of Mrs. Chandler's will. In the latter are sundry provisions of which only one need be noticed, namely, a direction that the trustee use corpus for the schooling of Desmond's male issue. The particular parts of section II which Desmond or the guardian ad litem insist are operative, are the initial gift to Desmond of $2,000, the power to encroach on principal up to $2,000 a year, the direction to pay schooling out of corpus.
Testatrix' son Desmond, her only child, was totally deaf. Obviously, his welfare was the principal, indeed almost the sole, object of his mother, as disclosed in her will. It seems to me that she was confident that her husband, if he survived her, would aid their son financially and therefore it would be unnecessary for the son to have the initial gift of $2,000 or for the trustee to encroach on principal more than $1,000 annually, or to use the principal to send Desmond's issue to school. It may be that testatrix overlooked the event which actually happened, namely, that her husband would survive her but would die shortly thereafter and so would be unable to continue to help Desmond byinter vivos gifts. Or she may have expected that her husband, if he predeceased her, would leave his estate to her; but if he survived her, would leave his estate to Desmond, and thus would give financial support to their son after the father's death. But whatever her exact anticipations, I am satisfied that she did not intend the three provisions of section II on which Desmond or the guardian ad litem relies, to take effect unless her husband predeceased her.
Desmond presents another argument which I will now outline. The only gift in remainder found in section I is as follows: "If my said son dies without issue surviving during the life of my husband William H. Chandler, the principal of this trust, with any and all accumulations, shall *Page 338 
be paid to my husband William H. Chandler." It will be observed that this bequest cannot take effect.
Section II contains the following provision for the ultimate disposition of the estate: "When all of such issue [the issue of the son] shall have reached the age of 30 years, if my son is not living, the remainder of the estate shall be divided equally among such issue, but if my son is living, this distribution shall not be made until after his death. * * * If my son shall leave no issue surviving or if surviving issue shall die before reaching the age of 30 years," the corpus shall be divided among testatrix' brother-in-law and others.
The gift of income to Desmond is not expressly limited as to time: "The income from the said trust estate I direct shall be paid to my son Desmond B. Chandler in monthly or quarterly installments." Desmond claims the entire estate, relying first on the well-established rule that a gift of income without limitation as to time is a gift of corpus. Second, he urges that if he is given only a life estate by the will, still in the event which has occurred — the husband survived testatrix but died in the lifetime of Desmond — testatrix did not dispose of the remainder but, as to it, died intestate; that he is sole heir and next of kin of his parents and hence that his equitable life estate and the reversion have merged so that he owns the whole. The guardian ad litem pleads that Desmond is barred from asserting this claim by a certain decree of the Orphans Court.
In 1941, the Trust Company, which is complainant in this cause, filed in the Essex County Orphans Court its petition, as executor of the will, praying a decree of distribution and joining as respondents all the defendants to the present bill of complaint. Testatrix' son Desmond appeared by his proctor, and the infant William by a guardian ad litem. The petition set forth that Desmond claimed that "he is entitled to receive the residue of the estate, absolutely, because only the provisions of section I of decedent's will became operative; or, in the alternative, that he is entitled to the entire corpus of the estate since section I gives him a bequest of the entire income, without limit as to time or gift over which *Page 339 
can operate." The petition further showed that "in the event section II of said will is operative" the infant William H. Chandler, 2d, and certain other named persons" might have a vested or contingent interest in the residuum of the estate" and that they were the persons interested in the proceeding. A copy of the will was annexed to the petition. The petition fully complied with the rules of the Orphans Court. No written pleadings were filed by the respondents and this, too, was in accord with established practice.
The master to whom the cause was referred, having studied the briefs of the parties, filed an elaborate report, in which he carefully reviewed the claims of Desmond and reached the conclusion that Desmond was not presently entitled to thecorpus of the estate. Accordingly, the court, on August 11th, 1941, decreed that the Trust Company, as executor, "pay to itself as trustee the residue of the estate * * * to dispose of the same pursuant to the trusts of the will."
The Orphans Court had jurisdiction to decree a distribution of the estate in accordance with the provisions of the will. R.S.3:26-2. Although the constitutionality of this section of the statute has been frequently mooted from the time of Adams v.Adams, 46 N.J. Eq. 298, yet it has been uniformly followed since its enactment more than 70 years ago. P.L. 1872 p. 47. At this late day, it would be impolitic for any court other than the Court of Errors and Appeals to deny effect to the decree of the Orphans Court on the ground that the statute is unconstitutional. Of necessity, the court was empowered to construe the will so far as would enable the court to decide upon the distribution. Hill
v. Bloom, 41 N.J. Eq. 276; In re Baker's Estate, 61 N.J. Eq. 592; In re Morrisse's Estate, 91 N.J. Eq. 477.
Chancellor Green, in Sayre's Adm'r v. Sayre, 16 N.J. Eq. 505,
while stating that a decree of distribution of anintestate's estate is conclusive as between administrator and person entitled, held that if the decree be erroneous, a party who has been deprived of his rights by the decree, has a remedy against the distributees who have wrongfully received the estate. "In their favor, as against the rightful claimant, the decree would not operate." In Adams v. Adams, supra, *Page 340 
our highest court approved Sayre v. Sayre, but gave to the provision of the statute empowering the Orphans Court to decree distribution under a will, a different effect from the section relating to the distribution of an intestate's estate. The court held that distribution under a will could be decreed only on reasonable actual notice to all interested parties. As such notice had not been to complainant in that suit, she was not concluded by the decree of the Orphans Court as against the persons among whom the estate had been distributed. But the court said, "If brought into court by due process or notice, the decree must bind her."
By this construction of the statute, the proceeding in the Orphans Court, under R.S. 3:26-2 for the distribution of a testator's estate, is not strictly in rem, but partakes of the nature of a suit inter partes between the petitioner on the one side and the respondents on the other. Generally, a judgment does not conclude parties who are on the same side, as to their rightsinter se. But they are concluded as against each other where their adverse interests appear in the pleadings and they litigate between themselves. Rest. Judg. § 82. Pittsburgh, c., Co. v.McKees Rocks (Pa.), 135 Atl. Rep. 227. For instance, defendants in interpleader. Weber v. Weber (Md.),181 Atl. Rep. 670. Or subsequent lienors joined as defendants in foreclosure. Bourgeois v. Edwards, 104 Atl. Rep. 447. Or defendants in a suit like the one before me where a trustee seeks instructions. The proceeding in the Orphans Court for distribution of Mrs. Chandler's estate was of the same character. Desmond and the infant were brought in by due notice; their mutually adverse interest were sufficiently shown in the petition; they had the opportunity and did actually litigate between themselves, and they are bound by the resulting decree. For a recent note on the conclusiveness of the judicial construction of a will, see 136 A.L.R. 1180. As to the effect of decrees of our Orphans Courts, see Search's Adm'r. v.Search's Adm'rs., 27 N.J. Eq. 137, and Franklin v. Silvers,2 N.J. Mis. R. 583.
The decree of the Orphans Court established beyond contradiction that, when the decree was made, the Trust Company *Page 341 
had title to the residuary estate as trustee under an active trust and that Desmond did not have title save as a cestui quetrust. In re McCown's Estate (Pa.), 70 Atl. Rep. 784. So much at least was the necessary basis of the decree that the estate be paid to the Trust Company. There have been no happenings since the date of the decree to change the relative interests of the parties, and so Desmond is barred from renewing his claim here. Without myself construing the will of Mrs. Chandler in this respect, I will advise a decree directing the trustee to retain the estate and not surrender the corpus to Desmond. Nagle v. Conard, 79 N.J. Eq. 124. *Page 342